1          UNITED STATES DISTRICT COURT

2          WESTERN DISTRICT OF LOUISIANA

3              SHREVEPORT DIVISION

4

5    UNITED STATES OF AMERICA      *   Criminal Action
                                   *   No. 5:11-CR-0062-21
6    vs.                           *
                                   *   Shreveport, Louisiana
7    ROBERT CUFF                   *   December 1, 2011
                                   *   1:30 p.m.
8    * * * * * * * * * * * * * * * *

9

10              CHANGE OF PLEA HEARING

11
     Certified transcript of proceedings held before the Honorable
12   S. Maurice Hicks, Jr., United States District Judge.

13

14   APPEARANCES:

15       For the Government:    Mr. John Luke Walker
                                U.S. Attorney's Office
16                              800 Lafayette Street, Suite 2200
                                Lafayette, Louisiana  70501
17
         For the Defendant:     Mr. Stephen P. Karns
18                              Karns Law Firm
                                6116 North Central Expressway,
19                              Dallas, Texas  75206

20

21   REPORTED BY:               Marie M. Runyon, RMR, CRR
                                Federal Official Court Reporter
22                              300 Fannin Street, Room 4212
                                Shreveport, Louisiana  71101
23                              Phone:  (318) 222-9203

24
     PROCEEDINGS PRODUCED BY MECHANICAL STENOGRAPHY AND TRANSCRIBED
25   BY COMPUTER.

1          (Court called to order with the defendant

2                present at 2:05 p.m.)

3          THE COURT:  Good afternoon.  Please be seated.

4      Mr. Walker?

5          MR. WALKER:  Good afternoon, Your Honor.  We're here

6   in United States vs. Robert Cuff for a guilty plea, and I have

7   a signed plea package that I present to the clerk of court.

8          THE COURT:  All right.  Mr. Karns, you are retained

9   counsel for the defendant, Robert Cuff?

10         MR. KARNS:  Yes, sir.

11         THE COURT:  And how does your client intend to plead

12  today?

13         MR. KARNS:  Guilty to the engaging in child

14  exploitation enterprise, sir, count.

15         THE COURT:  All right.  Would you bring your client

16  up to this center podium, please.

17         MR. KARNS:  Yes, sir.

18         THE COURT:  Mr. Cuff, good afternoon, sir.

19         THE DEFENDANT:  Hello, sir.

20         THE COURT:  There is a specific procedure that we

21  follow in cases like this, and it requires you to be sworn in

22  just as any other witness would be sworn.  And I'll administer

23  the oath to you at this time.

24         (Defendant sworn.)

25         THE COURT:  Mr. Cuff, I need to tell you that you've

1    now been sworn to tell the truth in a federal court.  Your

2    answers to my questions today must be truthful.  If they're

3    not, you could have an additional charge filed against you for

4    making a false statement while under oath in a court of law,

5    possibly even for perjury.  If so, those charges are completely

6    independent of what we're talking about today.  But you

7    understand that, sir?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  You're charged in the Indictment with

10   multiple counts in this, and I'm understanding -- my

11   understanding is you're pleading guilty to Count 1 only?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  And you've read a copy of the Indictment

14   filed against you?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  And have you fully discussed that with

17   your attorney?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Do you need any additional time to

20   discuss the indictment and what you're charged with having done

21   wrong?

22             THE DEFENDANT:  No, sir.

23             THE COURT:  Can you tell me basically what you are

24   charged with having done criminally wrong, Mr. Cuff?

25             THE DEFENDANT:   I logged on to a web page during the

1   month of October 2009.  I was looking for some other type of

2   videos and found this web page and joined it.  And the end of

3   October, that was the last I was on it, sir.

4           THE COURT:  All right.  And in this particular

5   instance, Mr. Karns, have you discussed with him the charge

6   contained in Count 1, engaging in a child exploitation

7   enterprise?

8           MR. KARNS:  Yes, sir.

9           THE COURT:  Do you feel that he understands the

10  nature of the charges against him?

11          MR. KARNS:  Yes, sir.

12          THE COURT:  Let me ask that to Mr. Cuff.  Do you

13  understand what you're being charged with, sir?

14          THE DEFENDANT:  I believe so, sir, yes.

15          THE COURT:  All right.  You have any questions you

16  need to ask me about the charges contained in Count 1?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  How do you wish to plead to Count 1

19  today -- guilty or not guilty?

20          THE DEFENDANT:  Guilty, Your Honor.

21          THE COURT:  In pleading guilty, we'll go over a

22  number of rights which you have.  But the very first one we

23  need to talk about is the right to remain silent.

24      Up till now, you've been able to talk to only your

25  attorney, with no need to talk to anyone else at all.  In this

1  instance, though, I'm going to ask you questions that will
2  require you to admit your guilt, under oath, on the record of
3  today's proceeding.
4      So in order for me to proceed further, you're going to
5  have to give up or waive the right to remain silent. Are you
6  willing to do that?
7      THE DEFENDANT: Yes, sir.
8      THE COURT: In this instance, we have a written
9  factual basis, which I will tender to your counsel.
10     This particular document has the title "Factual Basis for
11 Plea of Guilty." And up at the top, it has your name on it,
12 Mr. Cuff, also known as "DD0040" and a/k/a "Slapalot"; is that
13 correct, sir?
14     THE DEFENDANT: Yes, sir.
15     THE COURT: Turn, if you would, to page 5.
16     In this instance, page 5 is the so-called signature page
17 of this document. Is that your signature there, Mr. Cuff?
18     THE DEFENDANT: Yes, sir.
19     THE COURT: Mr. Karns, there is your signature
20 approving it as his counsel?
21     THE DEFENDANT: Yes, sir.
22     THE COURT: This particular document contains factual
23 recitations to allow me to find a sufficient factual basis in
24 fact that you are guilty so that we can proceed further into
25 this hearing. We also have the option of calling an agent who

1   worked on the case and has access to and information about you

2   with regard to this particular Dreamboard incident.  It's

3   easier and cleaner and faster to use the written factual basis.

4        So let me ask you this.  Did you read this before you

5   signed it?

6            THE DEFENDANT:  Yes, sir.

7            THE COURT:  Do you find any errors in it?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Is it an accurate factual recitation of

10   your involvement in the role of the enterprise?

11            THE DEFENDANT:  Yes, sir.

12            THE COURT:  Pages 1 through 3 kind of detail how that

13   particular Dreamboard worked.  Page 4 actually -- and the top

14   of page 5 -- actually details your role in the enterprise.  Is

15   there anything that you're concerned about with respect to

16   pages 4 and 5 about your role in this offense?

17            THE DEFENDANT:  No, sir.

18            THE COURT:  Is there anything that you think needs to

19   be changed or altered in the way that it's worded on this

20   document?

21            THE DEFENDANT:  No, sir.

22            THE COURT:  All right.  The Court will accept the

23   written factual basis in lieu of live testimony in this matter.

24        I need to ask you a couple of personal questions.  First

25   of all, how old are you, sir?

1      THE DEFENDANT:  Forty-nine, Your Honor.

2      THE COURT:  And the highest grade or level of

3  education that you finished?

4      THE DEFENDANT:  High school.  But I have a hundred

5  and almost sixty credits in college.

6      THE COURT:  Is that due to your service in the

7  military?

8      THE DEFENDANT:  Yes, sir.  I took only classes that

9  would benefit my military career.

10      THE COURT:  All right.  You do not hold an advance

11  degree, but you have accrued a large number of hours?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  All right.  Are you currently under the

14  care of a doctor?

15      THE DEFENDANT:  Not at this moment, Your Honor, no.

16      THE COURT:  Have you had medical problems in the

17  past?

18      THE DEFENDANT:  I was told I did, but I was helped

19  out of the questioning.  When you leave a war zone, they -- the

20  corpsman would help me do the paperwork so I wouldn't fail it.

21      THE COURT:  All right.  Did you suffer from

22  post-traumatic stress syndrome?

23      THE DEFENDANT:  I was told I did since Somalia, Your

24  Honor.

25      THE COURT:  All right.  And did you recover from

```
 1   that?

 2            THE DEFENDANT:  No, Your Honor.

 3            THE COURT:  Okay.  And have you been actively treated

 4   for that?

 5            THE DEFENDANT:  I'm starting treatment now, Your

 6   Honor.

 7            THE COURT:  All right.  Are you on any kind of

 8   medications at the present?

 9            THE DEFENDANT:  No, Your Honor.

10            THE COURT:  And have you had any drugs or medicine or

11   pills in the last 24 hours that might affect your ability to

12   understand what's going on in this courtroom?

13            THE DEFENDANT:  No, Your Honor.

14            THE COURT:  You have any mental or physical problems

15   that would limit your ability to understand what is happening?

16            THE DEFENDANT:  I don't believe so, Your Honor, no.

17            THE COURT:  All right.  Do you in fact know why

18   you're here today?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  And you have participated with your

21   attorney in getting ready for today's hearing?

22            THE DEFENDANT:  For the most part, yes, Your Honor.

23            THE COURT:  All right.  Mr. Karns, do you see any

24   reason -- let me rephrase this.

25        Do you have any doubt, Mr. Karns, about your client's
```

1   mental competence to plead guilty today?

2           MR. KARNS:  No, sir.

3           THE COURT:  Mr. Walker?

4           MR. WALKER:  I've actually spoken to Mr. Cuff at

5   length, and I have no doubt as to his competence.

6           THE COURT:  The Court finds the defendant competent

7   to plead guilty to Count 1 today.

8       Mr. Cuff, I can tell you that a lot of people are nervous

9   standing where you're standing in this particular scenario,

10  sir.  And I want you to know that that's not unusual.  But if

11  it becomes uncomfortable or difficult for you, would you please

12  let us know.

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  In this instance, I want to ask if you've

15  had enough time to discuss every aspect of your case with your

16  lawyer.  Have you, sir?

17          THE DEFENDANT:  I believe so.  Yes, sir.

18          THE COURT:  Do you need any additional time to

19  discuss with him any part of the hearing or what you're about

20  to do?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  And are you satisfied with Mr. Karns's

23  representation of your interests?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Under the Constitution and laws of the

1   United States, you're entitled to a trial by a jury of 12

2   citizens that would be impaneled in order to listen to evidence

3   that the government presented against you.

4        I need you to understand that it would take all 12 of

5   those jurors -- they would have to agree unanimously that you

6   were guilty of the crime charged in Count 1 before you could be

7   convicted of that crime.  Do you understand that?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  You'd enter the trial with the strong

10  legal presumption of innocence.  What that means is you don't

11  have to prove your innocence, and it places the entire burden

12  of proof upon the government to come forward by competent

13  evidence and prove you guilty beyond a reasonable doubt to the

14  satisfaction of all 12 jurors.  Do you understand that concept?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  In the course of the trial, there are

17  certain essential elements which, by law, the government must

18  prove.  These are lengthy.

19       If you'd turn to that, Mr. Karns, so he can follow along.

20       MR. KARNS:  Yes, sir.

21       THE COURT:  All right.  Engaging in a child

22  exploitation enterprise.  In order to find the defendant

23  guilty, each of the following must be proved beyond a

24  reasonable doubt and to the satisfaction of all 12 jurors:

25  First, that you, Mr. Cuff, in concert with three or more

persons, committed a series of felony violations constituting three or more separate incidents; second, that the felony violations involved more than one minor victim; and, third, that the felony violations were in violation of Chapter 109A, 110, or 117 of Title 18 of the U.S. Code.

Title 18 of the United States Code, Sections 2251 and 2252A are both criminal statutes that are in fact part of Chapter 110 of Title 18 of the United States Code.

Thus, if one conspires to advertise child pornography, in violation of Title 18, U.S. Code, Section 2251(d)(1) and (e), or if one conspires to distribute child pornography, in violation of Title 18, U.S. Code, Section 2252A(a)(2)(A) and (b)(1), as are charged in Counts 2 and 3 of the Second Superseding Indictment, he has committed a felony violation of Chapter 110 of Title 18 of the United States Code.

Once again, that's a lot of legalese, but let me ask you. On those three essential elements, could the government prove you guilty beyond a reasonable doubt?

THE DEFENDANT:  I believe so, Your Honor.

(Defense Counsel confers with the
defendant.)

THE COURT:  This is a complicated set of interrelated components, and I'm going to take them component by component. The first part of it is essentially a conspiracy.  And I'm going to limit my question to the conspiracy aspect of this,

1    but you have to refer to other statutes in order to understand

2    the object of the conspiracy as well.  Okay?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Let's take the first thing first.  The

5    three essential elements that are there with the explanation,

6    could the government prove you guilty beyond a reasonable doubt

7    of those essential elements?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  And they could prove it to the

10   satisfaction of all 12 jurors?

11             THE DEFENDANT:  I believe so, Your Honor.

12             THE COURT:  Let's go to the second component.  It has

13   to do with conspiracy as well.

14        In order to be found guilty of a conspiracy, each of the

15   following elements must be proved beyond a reasonable doubt and

16   to the satisfaction of all 12 jurors:  First, that you and at

17   least one other person made an agreement to commit the crime

18   charged; second, that you knew the unlawful purpose of that

19   agreement and engaged in it willfully -- that is, with the

20   intent to further its unlawful purpose; and third, that one of

21   the co-conspirators, during the existence of this conspiracy,

22   knowingly committed at least one of the overt acts described in

23   the second superseding indictment in order to accomplish some

24   object or purpose of the conspiracy.

25        Same question to you.  If the government took you to

1    trial, could they prove these three components of conspiracy
2    against you?
3            THE DEFENDANT:  I believe so.  Yes, Your Honor.
4            THE COURT:  They could do it beyond a reasonable
5    doubt?
6            THE DEFENDANT:  I believe so.
7            THE COURT:  And to the satisfaction of all 12 jurors?
8            THE DEFENDANT:  Yes, Your Honor.
9            THE COURT:  The last component, in order to be found
10   guilty of advertising child pornography, in violation of Title
11   18, U.S. Code, Section 2251(d)(1), each of the following
12   elements must be proved beyond a reasonable doubt and to the
13   satisfaction of all 12 jurors:  First, that you made, printed
14   or published, or caused to be made, printed, advertised or
15   published a notice or advertisement; second, that the purpose
16   of the notice or advertisement was to seek or offer to receive,
17   exchange, buy, produce, display, distribute or reproduce any
18   visual depiction; third, that the visual depiction involved the
19   use of a minor engaging in sexually explicit conduct and such
20   visual depiction was of such conduct; and, fourth, that such
21   advertisement was transported using any means of facility or
22   inter -- of interstate or foreign commerce, including by
23   computer.
24       As to those four essential elements, do you believe that
25   the government could prove its case against you beyond a

1  reasonable doubt?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  And to the satisfaction of all 12 jurors?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  The last component.  In order to be found

6  guilty of distribution of child pornography, in violation of

7  Title 18, U.S. Code, Section 2252A(a)(2)(A) and (b)(1), each of

8  the following elements must be proved by the government beyond

9  a reasonable doubt and to the satisfaction of all 12 jurors:

10 First, that you knowingly distributed a visual depiction;

11 second, that the production of the visual depiction involved

12 the use of a minor engaging in sexually explicit conduct and

13 such visual depiction was of such conduct; and, third, that the

14 visual depiction was transported in interstate commerce or

15 foreign commerce.

16      Let me instruct you about how this fits together here,

17 Mr. Cuff.  You are only pleading guilty to engaging in a child

18 exploitation enterprise.  I have instructed you as to the

19 elements of conspiracy, advertising child pornography, and

20 distribution of child pornography because those are the

21 offenses you are alleged to have engaged in as part of the

22 child exploitation enterprise.

23      Child pornography is defined as any visual depiction of

24 sexually explicit conduct where the production of the visual

25 depiction involves the use of a minor engaging in sexually

1    explicit conduct.

2         Let's put all those together.  Could the government,

3    through its evidence, prove you guilty beyond a reasonable

4    doubt of those last essential elements?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  And to the satisfaction of all 12 jurors?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  So in order to put all of this together

9    of engaging in a child exploitation enterprise, you believe

10   that the government could prove its case against you?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  All right.  When you went to trial, your

13   lawyer would exercise constitutional rights which you have.

14   The most notable is the right to confront or see and hear each

15   of the witnesses from the witness stand who testify against

16   you.

17        Alongside that right is the right to cross-examine or

18   question those witnesses and test their knowledge about the

19   case as it involves you.

20        Your lawyer could ask questions on his own.  He could

21   object to questions that the government asked.  He could object

22   to evidence that the government sought to introduce.

23        All of these rights that your lawyer would be exercising

24   on your behalf are connected to the right to proceed to a trial

25   by jury.  Do you understand that?

1    THE DEFENDANT:  Yes, Your Honor.

2    THE COURT:  If you wanted to testify at your trial,

3 you could do so, if you chose to.  But there's no one that

4 could ever force you to take the witness stand at your own

5 trial.  Is that clear?

6    THE DEFENDANT:  Yes, Your Honor.

7    THE COURT:  Your lawyer could subpoena witnesses from

8 virtually anywhere in order to help make out a defense in this

9 matter for you.  You understand you would have that right?

10    THE DEFENDANT:  Yes, Your Honor.

11    THE COURT:  This trial that we've been talking about

12 hypothetically will never occur if I accept your guilty plea

13 today.  Do you understand that?

14    THE DEFENDANT:  Yes, Your Honor.

15    THE COURT:  All the rights that are connected with

16 that trial by jury will have to be given up or waived by you in

17 order for me to continue with this hearing.  Are you willing to

18 give up the right to a trial by jury?

19    THE DEFENDANT:  Yes, Your Honor.

20    THE COURT:  The procedure will be at the end of this

21 hearing I will enter a judgment of guilty on the basis of your

22 plea and then, at a later date, sentence you on the basis of

23 your sworn plea today.  You understand that procedure?

24    THE DEFENDANT:  Yes, Your Honor.

25    THE COURT:  Anyone threaten you or force you or even

1    trick you into pleading guilty, sir?

2          THE DEFENDANT:  Not in exactly those words, no, Your

3    Honor.

4          THE COURT:  Well, let's talk about that for just a

5    minute.  You claim that anyone coerced you into pleading

6    guilty?

7          THE DEFENDANT:  Uh . . .

8          THE COURT:  Or I could use the word "force."  Anyone

9    forced you --

10          THE DEFENDANT:  No, sir.

11          THE COURT:  -- to plead guilty?  No?

12          THE DEFENDANT:  No, sir.

13          THE COURT:  Has anyone threatened you in any way that

14    led you to plead guilty?

15          THE DEFENDANT:  Can I speak with my lawyer real

16    quick?

17          THE COURT:  You certainly may.

18          (The defendant confers with his counsel.)

19          MR. KARNS:  May I speak, sir?

20          THE COURT:  You may.

21          MR. KARNS:  You said "threatened," correct, sir?  I

22    don't know if that's something that you would be able to

23    explain or give an example.  I think Mr. Cuff thinks that, you

24    know, there's the threat that if he were to go to trial and

25    lose, that he could end up with a higher sentence than if he

1    were to plead guilty and accept responsibility.  I think that's

2    what he means, is that's the threat.  The potential worst

3    outcome is threatening.  So --

4              THE COURT:  In that sense, then, let me ask you this,

5    Mr. Cuff.  You understand the consequences and risks of going

6    to trial on this matter; is that correct?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  In a moment we're going to get to the

9    sentencing aspect of this and the use of U.S. Sentencing

10   Guidelines chart.  We'll discuss the benefit to you of pleading

11   guilty under the Guidelines as opposed to proceeding to trial.

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  In this instance, has anyone from the

14   prosecution threatened you with additional charges being filed

15   if you don't proceed to trial?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Has anyone come forward and threatened

18   you with adverse action being taken against you as a result of

19   your decision to go to trial?

20             THE DEFENDANT:  Just more -- more time in jail, Your

21   Honor.

22             THE COURT:  And that's a risk that's inherent in

23   every decision on whether to plead guilty or not.

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  You understand, then, that the

1    possibility exists that the guidelines would be calculated

2    differently if you proceeded to trial and were found guilty --

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  -- as opposed to pleading guilty here

5    today?

6             THE DEFENDANT:  Yes, Your Honor.

7             THE COURT:  Are you willing to plead guilty because

8    you are in fact guilty as charged in Count 1?

9             THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  And you're not pleading guilty just to

11   avoid trial; is that correct?

12            THE DEFENDANT:  Both, Your Honor.

13            THE COURT:  Okay.  I understand you have reached that

14   decision by talking at some length with your lawyer.

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  And he has explained to you the downside

17   of proceeding to trial?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  As well as the possibility of, perhaps, a

20   jury acquitting you of this conduct?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  And in balancing the risk of proceeding

23   to trial with the decision to plead guilty in fact to the

24   charge contained in Count 1, you've made the decision not to

25   proceed to trial but, instead, plead guilty?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  That does not change the fact that you

3    are guilty in fact of the charge in Count 1; am I correct?

4          THE DEFENDANT:  That's correct, Your Honor.

5          THE COURT:  And am I to consider this a free and

6    voluntary act on your part to plead guilty?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And it was done after substantial

9    consultation with your attorney?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Karns, is that accurate?

12          MR. KARNS:  Yes, sir.

13          THE COURT:  Do you understand my meaning for the word

14    "threat" with the additional questions that were asked of

15    Mr. Cuff?

16          MR. KARNS:  Yes, sir.

17          THE COURT:  Did that adequately cover it?

18          MR. KARNS:  Yes, sir.

19          THE COURT:  Mr. Walker, did that adequately cover the

20    issue of the potential downside being a threat, so to speak?

21          MR. WALKER:  I think it was more a consequence than a

22    threat, Your Honor.  Yes, I think you covered it.

23          THE COURT:  I think it is a consequence, and that is

24    what a rational person must make as a decision to go through

25    with the trial or not, and that's an ordinary process as

1    opposed to an extraordinary situation.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  That's how I understand it.  Okay?

4         Mr. Karns, are you comfortable with that?

5              MR. KARNS:  Yes, sir.

6              THE COURT:  You've signed a document called a "Plea

7    Agreement" in this case.  And that sets forth the terms and

8    conditions by which you have agreed to plead guilty and the

9    Government has agreed not to take you to trial.

10        Let's go first, if you would, to the last page on this,

11   which is the signature page.  That's page 6.  Mr. Cuff, you see

12   your signature there?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  And did your lawyer explain this to you

15   before you signed it?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  In the paragraph just above your

18   signature, there is the statement "No threats have been made to

19   me, nor am I under the influence of anything that could impede

20   my ability to fully understand this Plea Agreement."

21        The word "threats" again is used.  Do you understand that

22   no threat has been made to you that --

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Okay.  I wanted to be sure that's an

25   accurate statement.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And it is.  All right.

3      Mr. Karns, I see your signature at the top of this page.

4          MR. KARNS:  Yes, sir.

5          THE COURT:  And you approved it on behalf of your

6  client?

7          MR. KARNS:  Yes, sir.

8          THE COURT:  I'm not going to go over everything

9  that's contained in it.  But if you'd turn to page 2.

10      Mr. Walker, you rose for a reason, or possibly not?

11          MR. WALKER:  I rose prematurely, Your Honor.  It was

12  in anticipation of you asking another question.  I apologize.

13          THE COURT:  That's all right.

14      There in the middle of page 2, in bold, is the word

15  "sentencing" followed by a colon.  It says that Robert Cuff,

16  a/k/a DD0040, Slapalot, understands and agrees, first, that the

17  maximum punishment on Count 1 is a statutory mandatory minimum

18  sentence of not less than 20 years nor more than life in

19  prison.  You see that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  There's also a possibility of an

22  imposition of a fine of up to $250,000.  You see that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Or I could impose both.

25          THE DEFENDANT:  Yes, sir.

1     THE COURT:  There's also a requirement that you pay a

2  special assessment of $100 at the time of the guilty plea,

3  payable to the U.S. Clerk of Court for this district.  You --

4     THE DEFENDANT:  Yes, sir.

5     THE COURT:  -- see that?

6     Now, let's talk about supervised release.  There is a

7  possible -- there's not a possibility, but after you serve any

8  confinement sentence, you'll be placed under supervised

9  release, which means I impose a number of terms and conditions

10  on your behavior and you'll be under the supervision of a U.S.

11  probation officer for the length of time that I designate at

12  the time you are sentenced.

13     In this instance, the time that you'll be involved with

14  the probation officer will be somewhere between 5 years and a

15  lifetime in length.  Do you understand that?

16     THE DEFENDANT:  Yes, Your Honor.

17     THE COURT:  Do you understand that if you violate the

18  terms and conditions of that supervised release, that you're

19  going to find yourself back in court?

20     THE DEFENDANT:  Yes, Your Honor.

21     THE COURT:  If I find that you are in violation of

22  the terms and conditions that I have imposed, do you understand

23  that I can send you back to a federal correctional facility?

24     THE DEFENDANT:  Yes, Your Honor.

25     THE COURT:  Possibly for the full term of your

1    supervised release, which could be a lifetime.

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  All right.  In this instance, I need to

4    ask:  Is there anything else in the settlement -- I'm sorry --

5    the Plea Agreement that needs to be discussed, Mr. Walker?

6            MR. WALKER:  No, Your Honor.

7            THE COURT:  Mr. Karns?

8            MR. KARNS:  No, sir.

9            THE COURT:  Is there any outside agreement I should

10   be made aware of on this, Mr. Karns?

11           MR. KARNS:  No, sir.

12           THE COURT:  Mr. Walker?

13           MR. WALKER:  No, Your Honor.

14           THE COURT:  Let's talk about sentencing in this

15   particular matter.  There's a blue laminated sheet in front of

16   you.  That is a United States Sentencing Guidelines chart.

17   That chart contains two things -- first of all, your criminal

18   history.

19       If you qualify as a first time offender under federal

20   law, that's category Roman numeral 1.  There's six categories

21   going from left to right at the top.  Once your criminal

22   history has been evaluated, a criminal category is then

23   assigned in the presentence report.

24       Next, that report will contain an evaluation and a

25   computation of your net offense level.

1    Let's assume in this matter that your offense level

2  starts out pretty low down.  Let's just say it's a "38."  There

3  are certain things, depending on other relevant conduct and

4  enhancements, that can take that "38" and push it lower, toward

5  "43," which, as you can see, is definitely not to your

6  advantage.

7    But one of the benefits of pleading guilty is that under

8  the guideline calculations, there is a "minus 3" that is taken

9  away from that original score.  So, hypothetically, if you were

10  a "38," you could have a "minus 3" and get to a "35."  That

11  does not preclude, however, the addition of additional points

12  due to enhancements and other guideline requirements.  Is that

13  clear?

14    THE DEFENDANT:  Yes, Your Honor.

15    THE COURT:  I don't know where you fall on that

16  chart, Mr. Cuff, so I can't sentence you today.  But what I'll

17  do at the end of this hearing is that I'll order that the

18  presentence report will be written up in due course, only after

19  an extensive investigation into your social history, your

20  criminal history, and other relevant conduct.

21    A copy of that report that will be written up goes to

22  your lawyer, to the Government, and to me.

23    I'll tell you this right now.  That document is the

24  single most important document that I will use in determining a

25  reasonable sentence for you under all of the facts and

1    circumstances applicable to your case.  Is that clear?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Your lawyer will have the opportunity of

4    going over that document paragraph by paragraph with you.  If

5    during that process he sees that there are factual errors that

6    need to be corrected, he'll file a set of written objections.

7    If he sees that there are concerns about legal conclusions

8    under the Guidelines, or the applicability of a particular

9    enhancement, or possibly even a miscalculation of the numbers,

10   he will file a set of written objections.

11             Many times there are no objections whatsoever to the

12   report.

13             Sometimes the objections can be dealt with simply by

14   conferring between your attorney, between the government's

15   lawyer, and the probation officer, and the presentence report

16   is revised to reflect those changes.

17             If there are any objections that are still left over that

18   cannot be resolved, it becomes my responsibility to take care

19   of those and either overrule them or sustain them, in which

20   case we might have to recalculate where you fall on that chart.

21             But I don't have enough information to sentence you

22   today.  That's the purpose of the investigation and the report.

23   Clear?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  I am not going to predict what your

1    sentence will be, except I know that you are facing a 240-month

2    mandatory minimum.  Is that clear?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  It's possible that where you fall on that

5    chart could be below that 20-year minimum.  You understand

6    that?

7                THE DEFENDANT:  Yes, Your Honor.

8                THE COURT:  In which case where you fall on that

9    chart is raised automatically to a minimum 20-year sentence.

10               THE DEFENDANT:  Yes, Your Honor.

11               THE COURT:  All right.  That anomalous result occurs

12   sometimes, not all the time.

13         Has anyone made a prediction or a prophecy or a promise

14   to you as to what your sentence will be?

15               THE DEFENDANT:  Just my lawyer made an assumption,

16   Your Honor.  That's it.

17               THE COURT:  And he will do that during the course of

18   this, based on his experience.  I do want to tell you, though,

19   that the information that he estimates to be your sentence or

20   your possible sentence, I am the only one that has the

21   opportunity and authority to actually sentence you on the basis

22   of your guilty plea today.

23               THE DEFENDANT:  Yes, Your Honor.

24               THE COURT:  If you get to court and you have a fixed

25   idea of what your sentence will be, if I sentence you to more

1    time than you anticipate, I need you to understand this:
2    You're still bound by the guilty plea that you have entered,
3    under oath, in this court today.  Do you understand that?
4            THE DEFENDANT:  Yes, Your Honor.
5            THE COURT:  If you don't like the sentence that I
6    impose, it may give you a right to appeal that sentence, but
7    you're still bound factually by the guilty plea that you've
8    entered today.  You have no right to withdraw it on that basis.
9    Clear?
10           THE DEFENDANT:  Yes, Your Honor.
11           THE COURT:  Since you've acknowledged to me you're in
12   fact guilty as charged in Count 1, since you know what your
13   rights to a trial are, what the maximum possible punishment is,
14   and because you're voluntarily pleading guilty today, I am
15   going to accept your guilty plea, as well as the Plea
16   Agreement, and I will proceed to enter a judgment of guilty on
17   the basis of your sworn plea today.
18           This Court finds, first, that Mr. Cuff's plea is free and
19   voluntary; second, that he fully understands the nature of the
20   charges and penalties; and, third, that the Plea Agreement in
21   this matter has been properly explained to the defendant,
22   signed by the defendant, approved by his counsel and filed into
23   the record of today's proceedings; and, fourth, this Court
24   finds that there is a sufficient factual basis for entry of his
25   plea both from the written factual basis explained to the

1    defendant, signed by him, approved by counsel and filed into

2    the record of today's proceedings, as well as the defendant's

3    own admissions today made under oath.

4         The clerk is now ordered to enter a plea of guilty.

5         You now stand convicted as charged in Count 1 of the

6    Indictment.

7         I'm going to order a presentence investigation report,

8    and I urge you to cooperate with the -- with furnishing

9    information to be included in that report.  Once again, that

10   document is the single most important thing I'm going to use in

11   determining a reasonable sentence for you.  Clear?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  Counsel, I need to advise you that

14   letters of support on behalf of this defendant, while I have

15   some of them that were submitted at the detention hearing, I

16   expect that I will be receiving additional ones.  However, they

17   may be addressed to me, but they need to be sent to you.  And

18   if you would please collate them and, not later than ten days

19   prior to sentencing, forward them to me so that I can review

20   them in advance of the sentencing.

21        MR. KARNS:  Yes, sir.

22        THE COURT:  Sentencing in this matter is set for

23   March 8, 2012, 10:30 a.m.

24        Mr. Cuff, you're currently in the custody of the U.S.

25   Marshals Service, and you'll remain in the custody of the

1    Marshals Service pending the time of your sentencing.

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Next thing.  In discussions held off the

4    record before we convened today, I am concerned over not a

5    mental competency issue, I'm concerned over a mental status

6    issue, and I have provided counsel with the name of a local

7    Ph.D. psychologist, clinical psychologist, who can conduct

8    that.

9        I am concerned that he, "A," may need to be on

10   medication -- I don't know the answer to that -- and "B," I

11   want to be sure that he's properly classified within the

12   Bossier system where he's currently being held as a federal

13   detainee.

14       Mr. Karns, you'll be responsible for coordinating that.

15   And once you get further information, you can call my office to

16   determine exactly how to proceed from there.

17           MR. KARNS:  Yes, sir.

18           THE COURT:  Mr. Walker?

19           MR. WALKER:  The only thing I would ask is that the

20   United States probation department get whatever reports that

21   would result from that.

22           THE COURT:  So ordered in advance of getting that

23   report.  I will review that report as well.

24           MR. KARNS:  Yes, sir.

25           THE COURT:  All right.  Anything that we need to

1    cover further in this matter today?

2            MR. WALKER:  No, Your Honor.

3            THE COURT:  Mr. Karns?

4            MR. KARNS:  No, sir.

5            THE COURT:  All right then.  We'll move to the next

6    case.  Thank you very much.

7            (Proceedings concluded at 2:42 p.m.)

8

9

10                       Certificate

11   I hereby certify this 14th day of March, 2012, that the
     foregoing is, to the best of my ability and understanding, a
12   true and correct transcript from the record of proceedings in
     the above-entitled matter.

13

14   _____          /s/ Marie M. Runyon
                                                Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25